## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

HASSAN T. JOHNSON,

        Plaintiff,

v.                              Case No. 12-CV-2244-CM

PNC BANK,

        Defendant.

## MEMORANDUM AND ORDER

Plaintiff brings claims for race discrimination and retaliation against his former employer. He generally alleges defendant gave him unfavorable reviews, overlooked him for a promotion, and terminated his employment because of his race and in retaliation for his discrimination complaints.

This matter is before the court on defendant's summary judgment motion (Doc. 43). Defendant argues the court lacks subject-matter jurisdiction over plaintiff's termination claim. Defendant also contends it is entitled to summary judgment because plaintiff cannot show a prima facie case or pretext for his remaining claims. For the following reasons, the court grants the motion.

**I.    Background[1]**

Plaintiff is an African American male. He began working for defendant as a Loan Servicing Analyst I on June 1, 2010. Plaintiff reported to Athena Monger, and Monger reported to Tina LaFon.

---

[1] The following facts are properly supported and not genuinely disputed. Additional undisputed facts are included as necessary throughout this order. The court views the evidence and draws all reasonable inferences in the light most favorable to plaintiff, the nonmoving party. The court's effort to identify uncontroverted facts was undermined by plaintiff's repeated failure to comply with Federal Rule of Civil Procedure 56 and Local Rule 56.1. Instead of meeting the substance of defendant's facts, plaintiff's statements in opposition repeatedly overstate the evidence and are frequently argumentative and irrelevant. The court exercises its discretion and disregards those portions of plaintiff's responses that do not comply with the rules. *See Sellers v. Butler*, No. 02-CV-3055-DJW, 2006 WL 2873470, at *2 (D. Kan. Oct. 5, 2006) (collecting cases).

His initial job responsibilities included data entry, indexing documents, and paying invoices. After learning these tasks, plaintiff was trained on processing evidences.

Since he began working for defendant, the following events occurred:

- On November 17, 2010, LaFon and Monger met with plaintiff to discuss their concerns with his performance. LaFon told plaintiff he could not work overtime until his performance improved.

- On December 2, 2010, LaFon and Monger issued a verbal warning to plaintiff about his continued poor performance and low productivity.

- On December 9, 2010, plaintiff sent a complaint via email to defendant's Employee Relations Information Center ("ERIC"), LaFon, and Monger, alleging unfair treatment and a hostile work environment. After an investigation, defendant concluded his allegations lacked merit.

- On February 10, 2011, LaFon and Monger gave plaintiff a "Marginally Achieves" for his 2010 performance rating. They determined his performance failed to improve despite coaching and additional training.

- On February 11, 2011, plaintiff filed a second complaint with ERIC alleging his 2010 performance rating was retaliatory for his earlier complaint. After an investigation, defendant determined his allegations lacked merit.

- On March 14, 2011, Monger transferred departments. Sometime following his 2010 performance review, plaintiff asked LaFon about applying for Monger's old position. LaFon told plaintiff he could not apply because he had not been in his position for one year.

- On March 25, 2011, LaFon promoted Amy Barnett, a Caucasian female, to Monger's position. LaFon waived the one-year requirement for Barnett since she had only been employed by defendant since November 2010.

- On April 14, 2011, LaFon, Barnett, and Kevin Niekamp met with plaintiff to discuss their concerns with his performance. LaFon told plaintiff he was not meeting his production goals. During this meeting, plaintiff admitted that he regularly worked overtime without authorization and without reporting it on his timesheets.

- On April 25, 2011, LaFon contacted ERIC with concerns about plaintiff not accurately reporting his time. Defendant initiated an investigation.

- On April 29, 2011, LaFon and Barnett presented plaintiff with a written warning for deficient productivity and performance standards.

- On June 7, 2011, defendant terminated plaintiff's employment for committing a dishonest act after the investigation confirmed that he falsified timesheets and worked additional hours without reporting the time as required by defendant's policy.

Plaintiff filed the instant complaint on May 1, 2012, asserting various claims under Title VII of the Civil Rights Act of 1964 ("Title VII").  He generally alleges defendant gave him unfavorable performance ratings, overlooked him for a promotion, and terminated his employment because of his race and in retaliation for his complaints about discrimination.  Defendant moves for summary judgment, arguing that the court lacks subject-matter jurisdiction over plaintiff's termination claims and that plaintiff cannot demonstrate a prima facie case or pretext for his remaining claims.

**II.     Legal Standards**

Summary judgment is appropriate when there are no genuine disputes as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A movant that does not have the burden of persuasion at trial has the initial summary-judgment burden of "pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).  If the movant makes this showing, the burden shifts to the nonmovant to set forth facts from which a rationale trier of fact could find for the nonmovant.  *Id.*

**III.    Analysis**

**A.  The Court Lacks Subject-Matter Jurisdiction Over Plaintiff's Termination Claims**

The court first analyzes defendant's jurisdictional challenge.  Defendant contends the court lacks subject-matter jurisdiction over plaintiff's race discrimination and retaliation claims as to his termination of employment because he failed to exhaust his administrative remedies before filing suit.  The court agrees.

Plaintiff brings these claims under Title VII.  He must exhaust his administrative remedies before filing these claims in federal court, and "administrative remedies generally must be exhausted as to each discrete instance of discrimination or retaliation."  *Apsley v. Boeing Co.*, 691 F.3d 1184,

1210 (10th Cir. 2012); *see Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005) (explaining that failure to exhaust is a jurisdictional prerequisite).

Plaintiff's EEOC charge does not mention his discharge because he filed it before defendant terminated his employment. And he never amended his charge or filed a new charge to include allegations about his June 7, 2011 discharge. Plaintiff therefore failed to exhaust his administrative remedies for this discrete instance of discrimination and retaliation. *See Martinez v. Potter*, 347 F.3d 1208, 1210–11 (10th Cir. 2003) (concluding the plaintiff failed to exhaust termination claim). The court dismisses plaintiff's termination claims for lack of subject-matter jurisdiction.[2]

### B. Defendant Is Entitled To Summary Judgment On Plaintiff's Race Discrimination Claims

The court next addresses defendant's summary judgment motion on the race discrimination claims. Plaintiff does not have direct evidence of discrimination. So the court analyzes his claims under the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Under this framework, plaintiff has the initial burden of establishing a prima facie case of discrimination. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). If plaintiff makes this showing, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. *Id.* If defendant does so, the burden shifts back to plaintiff to show that there is a genuine issue of material fact as to whether defendant's proffered reasons are pretextual. *Id.*

#### 1. Plaintiff fails to make out a prima facie case

Defendant contends plaintiff fails to demonstrate a prima facie case of race discrimination. To establish a prima facie case, plaintiff must present evidence that (1) he belongs to a protected class, (2) he suffered an adverse employment action, and (3) the adverse employment action occurred under

---

[2] Plaintiff concedes this argument. He did not provide a substantive response and instead stated that he "exhausted his administrative remedies with respect to [defendant's] non-termination adverse actions . . . ." (Doc. 50 at 28.)

circumstances giving rise to an inference of discrimination. *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011).

Plaintiff contends defendant denied him a promotion, gave him the "Marginally Achieves" 2010 performance rating, and issued the 2011 written warning under circumstances giving rise to an inference of race discrimination. (*See* Doc. 50 at 30 (stating adverse employment actions); *id.* at 15–16 (agreeing with defendant's Statement of Undisputed Fact 34 for race discrimination).) Defendant concedes the denial of promotion is an adverse employment action but argues the 2010 performance rating and the 2011 written warning are not.[3] Defendant also contends that none of the adverse employment actions occurred under circumstances giving rise to an inference of race discrimination.

### a. **Plaintiff's 2010 performance rating is an adverse employment action but the 2011 written warning is not**

An adverse employment action generally is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007) (internal quotation omitted). Although adverse employment actions are not limited to these events, a mere inconvenience or alternation in job responsibilities is not sufficient. *Id.* (internal quotation omitted).

Plaintiff's 2010 performance rating made him ineligible for promotion to Monger's old position. The court agrees with plaintiff that a reasonable jury could find this rating constitutes an adverse employment action. *See Tungol v. Certainteed Corp.*, 202 F. Supp. 2d 1189, 1198 (D. Kan. 2002) (concluding that performance review was an adverse employment action because it "ultimately

---

[3] Plaintiff's opposition limits his adverse employment actions for his race discrimination claim to these events and does not discuss denial of overtime. He therefore waived that argument. Regardless, defendant would be entitled to summary judgment on it. For the same reasons, plaintiff cannot establish his denial of overtime occurred under circumstances giving rise to an inference of discrimination or that defendant's stated reason for not allowing him to work overtime (i.e., poor performance) is a pretext for discrimination. Indeed, Donisha Rangle is a member of the protected class that was allowed to work overtime. And Cardello was not allowed to work overtime when his productivity dropped.

affected [the plaintiff's] eligibility for promotion"); *Paige v. Donovan*, No. 09-cv-1811, 2011 WL 5520298, at *7 (D. Colo. Nov. 14, 2011) (agreeing that a jury could determine that the plaintiff's performance rating, which made her ineligible for promotion, was an adverse employment action).

But the court agrees with defendant that the 2011 written warning is not an adverse employment action. There is no evidence the 2011 written warning caused a "significant change" in plaintiff's employment status. *See Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1224–25 (10th Cir. 2006) (discussing when a written warning may be an adverse employment action). It is undisputed that plaintiff had the same job duties and title after the written warning. And there is no evidence in the record indicating that the written warning immediately placed plaintiff in an "at-risk" status for termination, reduced his salary, or otherwise significantly impacted his job responsibilities.

### b. **Plaintiff has not demonstrated the adverse employment actions occurred under circumstances giving rise to an inference of discrimination**

Defendant next argues that none of the adverse employment actions (i.e., denial of promotion, 2010 performance rating, and 2011 written warning) occurred under circumstances giving rise to an inference of race discrimination.[4] In an effort to make this showing, plaintiff claims he was treated differently than his co-workers. (Doc. 50 at 31 ("[Plaintiff] was singled out and treated differently than all other LSA I's.").) But he lacks evidence supporting this argument.

Plaintiff identifies several individuals he contends defendant treated more favorably. But plaintiff fails to provide specific evidence regarding the employment circumstances of these individuals. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997) (explaining that a similarly situated employee is someone outside the protected class that performs the same basic job and has similar employment circumstances). For example, plaintiff does not provide evidence about each individual's tenure with the company and performance ratings.

---

[4] The court considers the 2011 written warning in this section even though it is not an adverse employment action.

In addition, the limited evidence before the court demonstrates significant dissimilarities between plaintiff and several of these employees. For example, in October 2010, Matthew Radtke was promoted to Loan Servicing Analyst II, and Alysse Richards was assigned a new task within the department. As a result, these individuals were no longer required to dedicate all of their time to typical Loan Servicing Analyst I duties. Kelly Kelsay transferred out of the department in March 2011. And Julia Morphew had lower production goals than the rest of the department because she was a part-time employee.

Plaintiff's closest comparator is Frank Cardello, a white employee. But, unlike plaintiff, Cardello had markedly better production numbers and a significantly longer tenure at defendant. For example, Cardello processed 209 invoices and 349 evidences in December compared to plaintiff's 136 invoices and 3 evidences. As another example, Cardello processed 235 invoices and 400 evidences in April compared to plaintiff's 385 invoices and 64 evidences.

Moreover, defendant's treatment of Cardello actually demonstrates that defendant treated plaintiff the same as members outside of the protected class. Cardello received coaching and verbal warnings regarding his performance during the time period that they both reported to Monger and Barnett. And, because of his performance, Cardello was given a written warning in May 2011 and advised that he could no longer work overtime as a result.[5]

Plaintiff also contends defendant treated Barnett more favorably because LaFon waived the one-year requirement for her but not for him. Again, however, there are significant differences

---

[5] Plaintiff also contends defendant treated Cardello more favorably because defendant did not discharge Cardello for falsifying his timesheet. This argument relates to plaintiff's unexhausted termination claims. But, even if considered for plaintiff's remaining claims, the result is unchanged because Cardello and plaintiff did not engage in the same type of misconduct. Cardello made personal calls to his girlfriend but reported he was working on his timecard. Conversely, plaintiff worked past normal business hours but falsely reported that he stopped working at 5:00 P.M., thereby exposing defendant to liability for violations of state and federal wage laws. *See MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1277 (10th Cir. 2005) (explaining that alleged comparator must have engaged in the "same conduct").

between plaintiff and Barnett. Barnett had supervisory experience and received an "Achieves" rating in February 2011. Plaintiff did not have an "Achieves" rating and there is no evidence regarding plaintiff's supervisory experience. Indeed, plaintiff completely fails to provide evidence suggesting he had the objective qualifications for Monger's old position. *See Stewart v. Bd. of Comm'rs for Shawnee Cnty., Kansas*, 216 F. Supp. 2d 1265, 1283 (D. Kan. 2002) (granting summary judgment in a failure to promote case because the plaintiff failed to introduce any evidence that he possessed the objective qualifications for the job).

The court is mindful that plaintiff's burden to establish a prima facie case is not onerous.[6] *Aragon v. King Soopers, Inc.*, 19 F. App'x 806, 810 (10th Cir. 2001). But it is also "not empty or perfunctory." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1322 (10th Cir. 1997) (internal quotation omitted). The evidence before the court is completely lacking any factual basis for plaintiff's assertion that his race formed the basis for any adverse employment action. There is no evidence of racial slurs, comments from supervisors about plaintiff's race, or any other specific circumstances giving rise to an inference of discrimination.[7] Defendant is entitled to summary judgment on this claim.

### 2. Plaintiff fails to demonstrate pretext

Even if the court were to assume plaintiff met his initial burden under *McDonnell Douglas*, defendant has come forward with legitimate, non-discriminatory reasons for denying the promotion, for giving the "Marginally Achieves" 2010 performance rating, and for issuing the 2011 written

---

[6] Defendant argues that, as part of his prima facie case, plaintiff must establish that he was doing his job well. The elements of the prima facie case vary based on the type of adverse employment action alleged. *See Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005) (acknowledging that "the articulation of a plaintiff's prima facie case may well vary, depending on the context of the claim and the nature of the adverse employment action alleged"). Because plaintiff failed to establish the general test, the court did not apply the specific test articulated by defendant. To the extent satisfactory performance is part of the prima facie test, plaintiff fails to satisfy his initial burden for this additional reason.

[7] Plaintiff identified a few ambiguous comments that Monger allegedly made to him. But plaintiff concedes that Monger never made a comment about his race and that he only subjectively perceived them this way. And, when read in context, no reasonable jury could conclude that these comments give rise to an inference of discrimination.

warning – namely, plaintiff's failure to meet performance expectations. Plaintiff does not dispute defendant satisfies this burden. (Doc. 50 at 31.) The burden therefore shifts back to plaintiff to show pretext.

A plaintiff can show pretext by demonstrating that the defendant's stated reasons are "so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude [they are] unworthy of belief." *Id.* at 1039 (internal quotation omitted) (alternation in original). Plaintiff does not make this showing. He relies on essentially the same evidence discussed above, and it fails for the same reasons.

Plaintiff also contends he was the only one disciplined even though none of his co-workers were meeting the performance quotas. This argument is essentially the same as his argument about defendant treating other employees more favorably. And is it equally unpersuasive because the record reveals significant differences between defendant and his co-workers in terms of duration of employment and production numbers.

Moreover, the way defendant enforced its production quota does not demonstrate pretext. The Tenth Circuit rejected a similar argument in *Sampson v. Integra Telecom Holdings, Inc.*, 461 F. App'x 670, 674–75 (10th Cir. 2012). In that case, the panel acknowledged that only two sales representatives met their quota during the plaintiff's tenure and that the plaintiff sold more product than any other sales representative during December 2007. But the panel determined that "by this point [the plaintiff] had been placed on the Final PIP and failed to meet the end-of-month quota it required." *Id.* at 675. The panel concluded that "[a] reasonable jury could not find pretext in the way [the defendant] enforced its sales representatives' quotas." *Id.* For many of the same reasons, the result is the same in this case.

After reviewing the entire record, plaintiff fails to demonstrate that defendant treated other employees differently. Plaintiff likewise does not identify any internal policies that were violated.[8] Plaintiff might disagree with defendant's assessment of his performance, but he does not provide sufficient evidence that this reason for defendant's actions is unworthy of belief. *See Fallis v. Kerr-McGee Corp.*, 944 F.2d 743, 747 (10th Cir. 1991) (reversing jury verdict and stating that "a plaintiff cannot prevail by merely challenging in general terms the accuracy of a performance evaluation which the employer relied on in making an employment decision without any additional evidence" of discrimination). Defendant is entitled to summary judgment for this additional reason.

### C. Defendant Is Entitled To Summary Judgment On Plaintiff's Retaliation Claim

The last issue before the court is defendant's summary judgment motion on plaintiff's retaliation claim. This claim is also subject to the *McDonnell Douglas* burden-shifting analysis. Defendant contends summary judgment is appropriate because plaintiff cannot make out a prima facie case of retaliation or show pretext.

#### 1. Plaintiff fails to establish a prima facie case of retaliation

To establish a prima facie case of retaliation, plaintiff must come forward with evidence that (1) he engaged in protected opposition to discrimination, (2) he was subjected to a material adverse employment action after the protected opposition, and (3) a causal connection exists between the protected activity and the adverse action. *Luster*, 667 F.3d at 1096. A "material adverse employment action" is broader than an adverse employment action and is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 60 (2006) (internal quotation omitted).

---

[8] Plaintiff argues defendant violated its internal policy by hiring Barnett over Helen Casey—a qualified African American candidate. The court disagrees. The posting policy allowed LaFon to waive the one-year requirement, so the promotion of Barnett did not violate that policy. Moreover, LaFon hired Barnett over Casey because Barnett was an internal hire that had more recent supervisory experience. Plaintiff has not shown that this explanation is unworthy of belief. *See MacKenzie*, 414 F.3d at 1278 (determining that the plaintiff's subjective belief that she was more qualified than successful candidate was not enough to survive summary judgment).

Defendant concedes that plaintiff's denial of promotion, 2010 performance rating, and 2011 written warning constitute materially adverse employment actions. But defendant argues plaintiff lacks evidence of a causal connection between his complaints and these adverse actions.[9] Plaintiff attempts to show a causal connection through temporal proximity and other evidence.

Temporal proximity between protected conduct and a material adverse employment action may justify a causal connection. *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004). The period of time between the adverse actions and plaintiff's complaints ranged from approximately one month to two-and-a-half months. This timeline, standing alone, may be sufficient for establishing a causal connection. *See Annett v. Univ. of Kan.*, 371 F.3d 1233 (10th Cir. 2004) (concluding period of two to three months was sufficient to establish causation). But other evidence prevents a reasonable jury from reaching this conclusion.

Defendant began progressive discipline before plaintiff filed any complaints. LaFon and Monger met with plaintiff in November 2010 to discuss his performance and tell him that he could no longer work overtime. They also issued a verbal warning on December 2, 2010. The 2010 performance rating and the 2011 written warning were part of this progressive discipline policy. *See Hemsing v. Philips Semiconductors*, No. 98-2033, 1999 WL 476017, at *4 (July 9, 1999) (affirming summary judgment on retaliation claim in part because complaint was filed after plaintiff had been disciplined); *Schmidt v. Shawnee Mission Sch. Dist.*, No. 98-2377-GTV, 1999 WL 1007687, at *3

---

[9] Plaintiff asserts that his materially adverse employment actions are not limited to the three actions identified by defendant. Rather, he claims defendant also took the following actions in response to his internal complaints: (1) failed to properly train him, (2) subjected him to work restrictions, (3) increased his workload, (4) publicly humiliated him, (5) continued to deny him overtime, and (6) denied him a transfer out of LaFon's department. But plaintiff did not identify these materially adverse employment actions as a basis for his retaliation claim in the Pretrial Order. (*See, e.g.*, Doc. 42 at 14–15 (outlining factual issues for jury).) Plaintiff therefore waived these claims. *Reyes v. Bd. of Cnty. Comm'r of Sedgwick Cnty.*, No. 07-CV-2193-KHV, 2008 WL 2704160, at *13 n.24 (D. Kan. July 3, 2008) (stating that the plaintiff waived his failure to train claim by not including it in the pretrial order). A contrary result at this stage (such as allowing an amendment to the Pretrial Order) would prejudice defendant (as discovery is closed) and unnecessarily delay resolution of the lawsuit.

(Oct. 27, 1999) ("[T]he consistency of defendant's actions both before and after the filing vitiates any inference supported by the actions' temporal proximity to the first filing."). And the 2010 performance rating made him ineligible for the promotion to Monger's old position. These facts prevent a causal connection based on temporal proximity and entitle defendant to summary judgment on this claim.

### 2. Plaintiff fails to demonstrate pretext

Even assuming plaintiff establishes a prima facie case, defendant has offered a legitimate, non-discriminatory reason for denying the promotion, for giving the "Marginally Achieves" 2010 performance rating, and for issuing the 2011 written warning—namely, plaintiff's failure to meet performance expectations. The burden shifts back to plaintiff to show this reason is a pretext for retaliation. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013) (reiterating that the plaintiff in a retaliation case must establish "that his or her protected activity was a but-for cause of the alleged adverse action by the employer").

Plaintiff fails to make this showing. He does not identify any evidence that undermines defendant's reasons for the employment actions taken against him. The record demonstrates that plaintiff's overall production numbers were markedly lower than his co-workers before and after he filed his internal complaints. Indeed, the adverse actions following his complaints were merely subsequent steps that "simply completed the disciplinary process already set in motion." Morgan, 108 F.3d at 1324.[10]

Plaintiff makes several other arguments that are equally unpersuasive. For example, he argues LaFon had a tendency to hold grudges based on an anonymous comment in LaFon's 2011 performance evaluation. This vague comment was made six months after defendant discharged plaintiff and is disconnected to his claims. Plaintiff also ignores the fact that Donisha Rangle filed a discrimination

---

[10] Plaintiff argues that he was the only one disciplined even though he was meeting his production goals and his co-workers were not. This argument is disingenuous because the record demonstrates that plaintiff's production goals were set lower than his co-workers to account for his performance issues.

complaint but did not receive a poor performance rating or written warning. And Cardello received coaching and warnings for poor performance and was not allowed to work overtime even though there is no evidence that he filed a complaint.

After reviewing the complete record, the court determines that no reasonable jury could find that defendant's reasons for the identified employment actions were a pretext for retaliation. Plaintiff failed to meet defendant's performance expectations and received progressive discipline before filing any complaints. Although his invoice production increased, his overall production lagged behind his coworkers. He has not identified any similarly situated employee defendant treated more favorably and, instead, the record reveals one employee that filed a complaint and did not suffer adverse actions. Defendant is entitled to summary judgment.

**IT IS THEREFORE ORDERED** that Defendant's Motion For Summary Judgment (Doc. 43) is granted. The court dismisses plaintiff's race discrimination and retaliation claims based on plaintiff's discharge for lack of subject-matter jurisdiction. The court grants summary judgment in defendant's favor on plaintiff's remaining Title VII claims.

Dated this 13th day of November, 2013, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
United States District Judge